Okay, our next case is 22-3040, United States v. Austin. Welcome back, Mr. Hansen. Judge Stemkevich, you may have pleased the court. This is another guidelines case. This one involves section 2K2.1b6b, which is a four-level increase for possessing a firearm in connection with a nether. A felony offense, the alleged another felony offense at issue here is an uncharged aggravated assault under Kansas law. The allegation was that Mr. Austin struck his girlfriend 24 years, Jasmine Moten, with a firearm. Below, the government had the burden to prove this increase, and thus the allegation by a preponderance of the evidence. Under section 681.3, the government could meet this burden only via evidence or information that had sufficient indicia of reliability to support its probable liability. The government didn't do that below. The sentencing hearing, the government called a police officer to testify that Austin and Moten's teenage son told the officer that his mother came into his bedroom that morning, and he thought she told him to call 911 because Austin hit her with a firearm. That evidence doesn't meet the reliability standard under 681.3. But didn't the district court watch the video of the officer who actually talked to the son, and the son saying on the video what his mother said? Yes. So the case doesn't, or I think shouldn't turn on the son's reliability, or the son's credibility, because he doesn't know anything? So the son doesn't know what happened. No, he knows what she said happened. True, correct. And so the question is, what if what she said happened actually happened? What about the photos of the bruises on her face? Yeah, I mean, I think that's probably where to go here. I mean, I think from our perspective, Mr. Austin is, you know, healthy, individually, 6'1", 200 pounds. We do not think that those photos at all show, at all corroborate a story that he hit her with a firearm. That's just, I don't follow that at all. I mean, there was no testimony that they were consistent with being struck by a firearm. It was just, here's these photos. The government calls them superficial marks. These are photos that were taken like an hour, 90 minutes, maybe two hours after the incident. I mean, no visible bruising. It just, I don't know how they corroborate. That's our position on the photos. And I think when you look at everything else going on, the government did not introduce anything else that was corroborating information. So, clear error. So, yeah, I mean, basically, we've made an argument that it shouldn't be clear error, but I think you should buy it. But if you don't, you know, this court has traditionally applied clear error review in this context. But even with clear error review, there has to be evidence. There has to be something that supports the claim, and that's where we're at on this. We do think that, you know, United States v. Fennell is a case that criminal defendants love to use, and they often aren't successful in doing so. But it happens every once in a while that a case is like Fennell. We think this case is Fennell. We really do. This is an unobserved witness giving an unsworn statement that lacks detail. It's multiple hearsay. If there is a difference between this case and Fennell— Who is the unobserved witness? Who is the— The unobserved witness. The unobserved witness is Jasmine Moten. The court never observed her. She is unobserved, just like the witness, the girlfriend was in Fennell. But a different motive, right? No one says that the son here had a motive to try to pin something on his father. The girlfriend may be shakier in the Fennell case. Correct. So that's a difference. Well, no. So the son is compared to the probation officer in Fennell because that is the second level, or the first level of hearsay. In our case, it's the son. In Fennell, it's the probation officer. It's the girlfriend and the son and the probation officer. The son's different than the other ones, right? He's right in the middle of it and has no axe to grind. So if the son said, I saw it happen, I would be all on board with what you just said. Did Mr. Austin admit to having struck her with an open fist or with a fist or an open hand? Or is he only opposing that he hit her with the firearm? No, he doesn't. No hit, nothing. And has no explanation for the scratching and the bruising. Does he have an explanation? Yeah. Was anything offered? She fell down the stairs or whatever? I'm not sure he would be able to do that. What she said in her interview with the officers, the police report that was attached to the government's sentencing memo, gave, I think she said, a minor physical altercation from a few days before. What if he had struck her with his fist? Would the four levels still apply or no? That sounds like a felony to me. I'm not sure if that is or not. I mean, not really up on my aggravated assault in Kansas. That sounds like a felony. So I would say yes, unless for some reason it's not. But the theory was clearly that it was a firearm. I mean, I don't have much more to say on this. It's pretty straightforward. We have really tried to set this up as basically not any different than fennel. And I think that is absolutely true. And I don't think— I think the government's argued waiver. Just quickly respond to the preservation argument on the adequately preserved hearsay question. Okay. So we did not make—we did not raise 20 issues on appeal, which is what the government says. So there is a theory that was raised below, and that theory is what we've raised on appeal. I mean, maybe we've done a better job with it on appeal, but I think that's pretty much always true. And that is not a preservation issue. I think this court consistently rejects these types of arguments. We argued below that the evidence was insufficiently reliable. We're arguing on appeal that the evidence is insufficiently reliable. I disagree that we've made these drastically different arguments. I think we've basically said the same thing. I think we've put some flesh on the bones, like we always do. And I think it would be a very—I think you would have to extend the word count of opening briefs to about 20,000 words if you agree with the government that this is forfeited, because if I've got to explain every time I, you know, provide a different fact in the record or mention something that the trial attorney didn't mention under plaintiff review, it's going to take a lot of work. And I just don't think that's the law. It's not the law. And so it is—I mean, the other thing with the preservation is, I mean, this was addressed below. It was raised. They argued, you know, responded. There was a hearing. There was a ruling. It's clearly preserved, we think. I'm happy to save the rest of my time. Thank you. Questions? Let's hear from the U.S. attorneys. Good morning, Your Honors. James Brown for the United States. Your Honors, we'd ask this court to affirm the district court. The district court made findings that meet the guideline standard of sufficient reliability to support application of the enhancement. That evidence included statements made by the son of Ms. Moten, A.A., that the defendant hit her with a firearm. They included his repeated and contemporaneous iterations of that same statement to the officer when he was interviewed. His statement is corroborated by photos in the record that the district court found provided some corroboration of his statement. And his statement is also consistent with the background facts of the events that happened in the household that morning where there was arguing and pushing. Ms. Moten said in her report that there was arguing and pushing between she and her husband at 5 a.m. And the kids heard the arguing and pushing. So based on these facts that are sort of mutually corroborative, especially the photos that the district court found corroborative, we contend that the district court did not clearly err in finding that the defendant hit Ms. Moten with a firearm for purposes of applying the enhancement because his hitting her with a firearm in the face constituted aggravated battery under Kansas law. Now, the defendant says this case is fennel. It is not fennel. In fennel, what happened is the probation officer interviewed the defendant's girlfriend over the phone, and that's all the evidence there is. There was no corroboration. There was nothing extraneous to support the statement. All it was was an interview conducted over the phone. The district court didn't get the chance to look at any witness demeanor or anything like that. But this case is different because we have corroboration. We have the pictures. In fennel, there were no pictures. There was nothing to independently corroborate that that happened. Here we have that. There were pictures. We also have Ms. Moten's statement to the officer that there was pushing and yelling at 5 a.m. in the morning that corroborates there was some type of confrontation. That was not present in fennel. Is there anything about the pictures that would show that it's a firearm that caused the damage rather than a closed fist or a slap? Your Honor, there's none. There's nothing in the record that would affirmatively show that. And if he had had a firearm in his left hand and struck her with his right hand, would you contend the four levels apply? Well, we think the four levels would apply, but that's not this case. But yes, to answer the court's question. Possessed in connection with? Do you think it would meet that? Possessed in connection with. You know, Your Honor, without looking at the law on that, I'd hate to give the court an answer that's incorrect. I think if you parsed the words, maybe it wouldn't fit, but we think in some other legal universe we might be able to cobble together an argument saying it could. Well, what I'm getting at is just how precise was the district court that the firearm is what caused her injury? The district court was not very precise. What the district court said was that AA's statement was credible and, quote, corroborated to some extent by the pictures and the marks on Ms. Moody's cheek. That's all we got from the district court. The district court didn't say it looks like those marks could have been made by a firearm. But that's implicit in the statement because the whole thing was about whether she got hit by a fart. But under the clear error standard, you know, is her view plausible? Is it permissible? It doesn't matter if she could be wrong or she's probably wrong or if there's another alternative interpretation of the evidence. As this court knows, under clear error, her view needs only be permissible. If it's found, if it's found, if the district court said, I find based on X, Y, and Z that he took the firearm and hit her and caused the bruising and scratching, then I hear you. But if the district court just said, well, we've got some bruising and scratching in the sense that he thought he'd heard that she said da-da-da, then I'm not sure I'm with you. Well, maybe I could convince the court by positing something. When she made that statement, she was making that statement when assessing the reliability and correctness of AA's statement that the defendant hit her with a firearm. So when she's saying it's corroborated to some extent, she's talking about AA's statement that he hit her with a firearm. So even though the court didn't say the words that Your Honor would have liked for the court to make, just to be said, the court's finding was implicit because that was the very point she was considering when she said that. It's his statement. His statement was that he hit her with a firearm. It is corroborated to some extent by the pictures and the marks on Ms. Moten's cheek. That's what she was referring to. So that's why we think that that statement is basically, it's permissible view of the evidence and equates to a finding that the pictures corroborate AA's statement and the statement was that he hit her with a firearm. In a clear view, that's good enough because that view of the evidence is permissible and plausible and supported by the evidence. And that's really all we need here. Does he have to intend to hit her with a firearm if he's pushing her away and pursuing her and he has the firearm in his hand and she is hit with the firearm? Would that be four levels? Well, Your Honor, I think that in order to commit, basically to commit another crime, the crime of aggravated assault or aggravated battery is an intent crime. So we think it would probably have to be intentional, yes. And the fact that this happens during an argument at 5 a.m. where they're shoving and pushing and screaming, we think that that's inferable from the record. But the court is presumed to know the law. The court found that this met the standard for the crime under Kansas law. Now, the court points out, I'd like to segue to another section here. The court points out that, well, didn't the court have to find intent? The defendant never argued that. That was not brought up below ever. So we think that's not even before the court right now. So if the court doesn't have any more questions about that aspect of the case, I'd like to move to the preservation issue, if I may. So this is an interesting case as far as preservation goes because the defendant presented three arguments to the district court. He said that Ms. Moten was unreliable because we said in another context she was unreliable. He said, number two, that Ms. Moten denied that the defendant hit her. And number three, he said that the children did not observe or hear the hit. Those are his only three arguments. He made these three arguments, and I'll call them theories, these three theories, under the general legal rubric or general category of argument that the evidence was insufficient to support the enhancement. That's all he put on before the district court. Now he comes to this court with 16 new arguments. He doesn't recognize that they're new arguments. He doesn't argue for plaintiff review. He did not flag the double hearsay issue before the district court. He never flagged that. He never said that the hearsay is unreliable and should not even be considered. He never said that. He never said that the pictures, the marks on the pictures are not consistent with the firearms, so there's no way that could work. He never said that. He never said 16 of the arguments he now presents on appeal. This court only considers issues and theories that were passed on below. He made three theories or presented three theories under the general legal rubric that the evidence was insufficient. The only three theories he presented are Ms. Moten was unreliable because the government said so in another context. Ms. Moten denied that it happened, and the children did not observe or hear the fight, hear the hitting. That's it. That's all he said. So naturally, we look at this court's jurisprudence and say, are these arguments preserved? If he'd said hearsay, would that have alleviated all your concerns? No, because his argument is that the hearsay is inherently unreliable, that it's double hearsay, so it's doubly unreliable. He spends pages talking about the unreliability of double hearsay and says as a matter of law, it's so unreliable that this court can't even consider it. That's one of his preeminent arguments on appeal. He never brought that up before the district court. Now, the court does flag another interesting issue, Judge Tinkovich, with a question. If he just said hearsay, and that gets to a really important point, the quest, the test in this circuit as to preservation, as this court said in Harrison, is whether the district court was adequately alerted to the issue. And this court says in Gwinder that you're adequately alerted if your objection is definite enough to indicate to the district court the precise ground for a party's complaint. So he just said hearsay, and that's it. That doesn't alert the district court to the issue, because that does not indicate to the district court the precise ground for a party's complaint. That's how you preserve an issue under Gwinder. And if you look at the Harrison quote, that's how they basically talk about the test. And then the defendant also talks about a case called McIntosh, where this court has some stray dicta that the defendant's brief in that case was more detailed than the arguments they were presented below. And that's basically what my colleague on the other side is arguing today. We're presenting a more detailed version of our arguments below. That's all we're doing. But in Herrera, this court said that in McIntosh, the arguments were substantially similar, if not identical, to the arguments presented below. That's not the circumstance we have here. These arguments are not substantially similar, if not identical, to the arguments presented below. The defendant also says, what matters, though, are the theories. That's all that matters. And our general theory was that the evidence was insufficient or insufficiently reliable to support the enhancement. That's not a theory. That's the general legal rubric, or the general category of argument. The court draws a distinction between a general legal rubric or a general category of argument. The theory is the A, B, C, D under the general category of argument. He presented one legal rubric. The evidence is insufficient to support the enhancement. He had three supporting theories. Ms. Moten was unreliable. Ms. Moten denied that it happened. The children didn't see it. And that's all. So he doesn't get there under any of this court's preservation doctrines. So we really don't see how the arguments are preserved. And, just keeping on the theme, because they're not preserved, they're subject to plenary review. They're forfeited. OK, you can argue for plenary review, but he doesn't do that. Because he doesn't do that, he's waived those arguments. He's waived the double-hearsay argument. He's waived the argument about the pictures, that we don't see how the pictures support anything. He's waived that. He didn't bring that up to the court. He could have said, Your Honor, these pictures don't support this. And the court could have said, could have added more, more explanation, something more. But when you make, you have to, the point of making the argument is to alert the district court to it and give the district court the opportunity to respond to the argument and make a record. That's what courts do. And then we bring that record to the district court so this court can assess what happened. That's how we make a complete record. Not by being silent and not saying anything and then bringing all your new arguments to this court to act as the fact finder on clear review. That's not how it works. And that's not what this court's precedent says we should do. That's not how it works. So, I think I've said what I came here to say. And if the panel doesn't have any further questions, I would yield the remainder of my time and ask this court to affirm. Thank you, counsel. We appreciate that. Mr. Ansmeyer, you have some rebuttal if you'd like. Let me, I've got some time here. Let me see if I can cover some ground on four points. First, so the government says the word corroboration, but I don't know, there was very little substance there. I think he's, you know, he talks about the photos. I didn't hear anything else, and I don't think there is anything else. So let me make just six quick points on these photos that hopefully will put this in context a little bit, aside from what I've already said about Mr. Austin's physique. So first, A.A. said she didn't appear injured. Ms. Moten didn't appear injured when she asked him to call 911. There was no bleeding or anything else. N.A.A., who was in the room, he didn't see any injuries. Ms. Moten denied to the officers that she was injured. Neither detective who interviewed Ms. Moten testified or otherwise opined on what they thought about the superficial marks on Ms. Moten. No testimony from anyone on whether the superficial marks were consistent with being hit by a firearm. And again, as I already mentioned, we do not think the photos are consistent with being hit by a firearm. So on Fennell, the government says that case did not involve corroboration. But it's, that's just, so what happened in Fennell was that the defendant shot, fired a machine gun. He pleaded guilty in state court to firing a machine gun. So the question was whether he fired it at the girlfriend. So to say that there is evidence that the defendant committed the act is just not true. There is not only evidence. There was an admission that he did the thing. The only question was, well, was it pointed at her?  And this court says, no, that's, you got to do, you got to do better than that. And that we do not think is any materially different than this case at all. Especially when you consider that Mr. Austin was never charged in state court. So this case is sort of an a fortiori in our mind to Fennell because Mr. Austin did not even plead, he didn't plead guilty to a misdemeanor. He didn't have to go to court on the charges. He was never charged. Judge Phillips, just to address, when you asked me that question, I thought we were talking about whether it would amount to a felony and not a misdemeanor. So I missed the in connection with part of your question. Apologies for that. And I'm not sure that I can give an answer on that either. It does seem like the key here is that it was the firearm that was used. So Mr. Brown is very upset about the preservation issue. I think one thing to remember in this case is that there was briefing, there was an evidentiary hearing. After the judge took evidence, the judge left the bench. The judge came back on the bench. The judge ruled. There was not an opportunity. The judge did not say, as typically happens, as happened in the case I argued earlier, what's your argument? That did not happen in this case. So to say that our trial attorney didn't stand up and say these things is, I mean, in context, well, there wasn't an opportunity to stand up and say these things. And so, yes, and we've gone through the arguments in the reply brief, and we've given record sites to where these things were brought up during the questioning because that's all we have. We didn't have an argument. So we look at the questioning. What were the questions asked? The things that we said in our briefing, the things that the district court said in its ruling. This is, again, there is nothing that prevents us from coming to this court and saying the things that we've said to support the argument we made below. And the cases, if there is a case that says what the government is saying, I don't know what it is, and the government hasn't provided it. None of the cases cited in the government's brief say anything that there's this legal rubric. And, I mean, I've never even seen that word used in preservation in this court's precedent. And then underneath the legal rubric, you have legal theory. That's not, I guess we can all do some research on that. But, I mean, at the end of the day, you have a legal theory. It was sufficiently reliable evidence, and whether the government met its burden of proof, that's exactly what we're arguing here. To the extent we needed to say these things, we absolutely think we said pretty much all of it. Maybe we didn't say it in the way the government would have liked, but it was very clear what was going on below. We have a detailed six-page order or oral ruling from the government, from the district court. So to say that the government wasn't on notice and to say that we can't appeal the ruling is really wrong. And with that, I don't know that I've ever given this court time back, but I will cede the remainder of my time. We're honored for that. Thank you very much. Thank you, counsel. I appreciate the fine arguments. You're excused, and the case is submitted.